# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5072 | **DATE** | March 26, 2001 |
| **CASE TITLE** | U.S. ex rel. Joseph Garst v. Lockheed Integrated Solutions Co. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion to dismiss the amended complaint [ ] is granted. The relator has leave to file an amended complaint by April 27, 2001. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| x | Notices MAILED by judge's staff. | | | MAR 2 9 2001 | | 48 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | 15 | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to _____ | | | date mailed notice | | |
| KAM | courtroom deputy's initials | | | KAM | | |
| | | | | mailing deputy initials | | |

Date/time received in central Clerk's Office
(Reserved for use by the Court)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| JOSEPH E. GARST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98 C 5072 |
| | ) | |
| LOCKHEED INTEGRATED SOLUTIONS | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

MAR 2 9 2001

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the plaintiff's amended complaint. For the reasons explained below, the motion is granted.

### Background

Joseph Garst is a former employee of the United States Department of Veteran Affairs ("VA") who initiated this qui tam action against Lockheed Integrated Solutions Company ("Lockheed") under the False Claims Act ("FCA"). See 31 U.S.C. § 3729 (West Supp. 2000). The action seeks to recover damages and civil penalties on behalf of the United States arising from alleged false or fraudulent claims for payment presented to the VA.

48

The following facts are drawn from Garst's amended complaint ("complaint"), which we take as true for purposes of deciding this motion. In 1990, the VA issued a Request for Proposal ("RFP") for a nationwide office automation system for the VA. The project was known as "NOAVA," an acronym that stands for Nationwide Office Automation - Veterans Administration. The VA awarded the NOAVA contract to Lockheed, a wholly owned subsidiary of Lockheed Martin Corporation, in 1990. Lockheed hired a subcontractor known as SSDS, Inc.

The RFP required that the NOAVA system be compatible with certain computer systems the VA had already purchased, in particular, the Integrated Supply Management System ("ISMS"), its financial module, PRISM, and a network operating system known as Banyan VINES. It also required that the NOAVA system meet certain security guidelines. Under the contract, the VA was obligated to purchase equipment for the NOAVA contract from Lockheed alone.

According to the complaint, Lockheed made false representations to the VA in order to obtain the NOAVA contract and then failed to deliver on its promises. Lockheed failed to advise the VA that the individual it had identified as bearing primary responsibility for overseeing the NOAVA contract was no longer with the company; Lockheed falsely represented that its system would be compatible with Banyan VINES and would meet the VA's security

requirements; Lockheed promised that its network operating system, PC-NFS, would work but it never did; Lockheed promised that its system would run ISMS and PRISM but the system was never able to do so in a manner that met the VA's needs; Lockheed represented that it would supply qualified data processing professionals to provide technical support, but supplied unqualified personnel; Lockheed promised to deliver "state of the art" computer hardware, but provided hardware that was behind the "state of the art"; Lockheed represented that it would provide hardware and software efficiently, but delivery was often very delayed and machines arrived without the necessary equipment to make them functional; Lockheed represented that it would pay liquidated damages when equipment was delivered late but never paid those damages; and Lockheed represented that it would provide hardware, software, and services at a competitive price but engaged in "rapacious pricing practices" which caused the VA to spend far more than the market price.

In 1993, Garst submitted a detailed memorandum to the Office of the Inspector General ("OIG") complaining of Lockheed's performance. The OIG conducted an audit of the NOAVA contract and issued a report in September of 1994, finding that the VA did not maintain records adequate to enable oversight of Lockheed's performance of the NOAVA contract or of Lockheed's pricing

practices. The OIG report found that about three million dollars was paid to Lockheed in late payment penalties, in part due to deficiencies in Lockheed's billing practices. In addition, the OIG report found that the VA's contracting officer was not authorized to commit the VA to the large expenditures under the NOAVA contract.

Thereafter, Garst and others who complained about the "fraudulent aspects of the Lockheed NOAVA contract" suffered reprisals and were "removed from the communication loop concerning the NOAVA contract." Garst himself was forced out of the VA after he complained.

In 1998, Garst filed this complaint under the qui tam provision of the False Claims Act ("FCA"), which authorizes private individuals to file suit against any entity alleged to have presented a false or fraudulent claim for payment to the federal government. See 31 U.S.C. § 3730(b). After these private individuals, known as "relators" or "qui tam plaintiffs," file their complaints under seal, the government then has an opportunity to investigate and decide whether to intervene. 31 U.S.C. § 3730(b)(2). If the government decides not to intervene, the complaint is unsealed and the suit proceeds. The relator is entitled to a share of the proceeds if the action is successful, the amount depending, in part, on whether or not the government

intervenes. 3730(b)(1), (d)(1) (if the government joins the suit the relator is eligible to receive between fifteen and twenty-five percent of the judgment). Here, the government elected not to intervene, so the relator is eligible to collect thirty to thirty-five percent of the proceeds if the action is successful.

The defendant brings this motion to dismiss on the grounds that: (1) the relator has not pled fraud with particularity; (2) he has not stated a claim under the False Claims Act; (3) and the six year statute of limitations on the only bill presented (June of 1992) ran before the complaint was filed in August of 1998.

## Analysis

### A.   Count I: Violations of §3729(a)(1), (2), and (7).

Because the FCA prohibits entities from presenting "false or fraudulent claims" for payment to the government, the relator must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) that the alleged fraud "be stated with particularity." United States ex rel. Robinson v. Northrop Corp., 149 F.R.D. 142, 145 (N.D. Ill. 1993). This has been taken to mean that the plaintiff must plead the "who, what, when, and where" of the fraud. Id.

Lockheed argues that the complaint fails to provide sufficient information to allow Lockheed to defend itself. For example, the

complaint fails to identify what part of § 3729 the defendant violated and further fails to specify any claims for payment that Lockheed presented which were false or fraudulent. Moreover, Lockheed points out that the relator has failed to allege fraud with any particularity: the plaintiff has not identified any individuals who committed fraud, provided any specific dates, nor stated where the alleged fraud occurred.

In his Response, the relator does not identify the specific provisions of § 3729 that Lockheed allegedly violated, nor does he point to any particular false claims. The relator simply restates some of the general allegations in his complaint, relying primarily on his general claim that Lockheed induced the VA to enter into a $298 million contract with false promises about the quality of its equipment and technical expertise. As to Lockheed's argument that he has not pled fraud with particularity, the relator responds that he cannot be expected to supply information that is within Lockheed's control, and that the requirements of Rule 9(b) should be somewhat relaxed in this case because of the ten year duration of the contract.

Because the relator does not dispute Lockheed's conclusion that he only intended to state claims for alleged violations of 31 U.S.C. § 3729(a)(1), (2), and (7) in Count I, we will analyze liability only under these subsections.

1. **§ 3729(a)(1) and (2)**

Under subsections (1) and (2), the relator must allege that the defendant knowingly presented a false claim for payment to the government, or that it presented a false statement or record in order to obtain payment. See <u>United States ex rel. Bustamante v. United Way / Crusade of Mercy, Inc.</u>, No. 98 C 5551, 2000 Westlaw 690250, at *4 (N.D. Ill. May 25, 2000) (setting forth the elements of § 3729(1) and (2) separately). Moreover,

> "[K]nowingly" means the person (or entity): (1) had actual knowledge of the falsity of the information at issue; (2) acted in deliberate ignorance of the truth or falsity of that information; or (3) acted in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). Innocent mistakes or negligence are not actionable under this section. [Citations omitted].... In short, the claim must be a lie.

<u>Hindo v. University of Health Sciences</u>, 65 F.3d 608, 613 (7th Cir. 1995).

The defendant is correct that no specific false or fraudulent claims or records have been alleged. Only one claim for payment was alleged at all – a claim for $26,000 for 430 hours of work done to install Lockheed's network. But there is no allegation that the 430 hours of work billed was not actually done, <u>see id.</u> (finding that a claim was not fraudulent where there was no contention the work was not done), or that Lockheed knowingly misrepresented to the VA that its installation had been successful. <u>Cf. U.S. v.</u>

Hydroaire, Inc., No. 94 C 4414, 1995 WL 86733, at *4-5 (N.D. Ill. Feb. 27, 1995) (fraud was sufficiently alleged where the complaint stated that the defendant had certified that its product met the requirements of the contract and requested payment, but in fact the defendant knew the product was deficient).

The relator has cited no case for the proposition that he need not identify the false claims or records specifically, nor does he address the Seventh Circuit case cited by Lockheed, Midwest Grinding Co., Inc. v. Spitz, which held that dismissal of a fraud claim was proper where the plaintiff failed to identify the specific dates on which the defendant allegedly sent false invoices. 976 F.2d 1016, 1020 (7th Cir. 1992).

Reading the complaint (together with his Response) in the light most favorable to the relator, his claim is that Lockheed induced the VA to enter into the $298 million contract by making numerous false promises on which it failed to deliver. Relator apparently believes it is unnecessary to allege the individual false claims or records because the general allegations of overpricing for goods and services, assigning unqualified personnel to provide technical support, selling computers with a high failure rate, and designing a system which failed to meet the VA's needs, are sufficiently specific.

This sort of argument may apply in circumstances where the complaint alleges a very specific kind of false statement that appeared on every invoice submitted. See <u>United States ex rel. Johnson v. Shell</u>, 183 F.R.D. 204 (E.D. Tex. 1998) (holding that the relators did not have to specify invoice numbers and dates where they alleged that each and every monthly royalty report was false in the same respect). Here, however, the relator attempts to allege various kinds of fraud occurring over a period of ten years. Further, it does not appear from the complaint that all the invoices submitted to the VA over the ten year duration of the contract were false or fraudulent. See Compl. ¶ 64 (referring to the "fraudulent aspects of the Lockheed NOAVA contract"). In such circumstances, it is appropriate to require that the relator describe the claims or records specifically and allege wherein they were false. See <u>United States ex rel. Clausen v. Laboratory of Am., Inc.</u>, 198 F.R.D. 560, 564 (N.D. Ga. 2000) (dismissing FCA claim where the relator failed to allege any false claims or the dates on which they were submitted, and citing cases dismissing on the same grounds). In <u>Clausen</u>, a case where the relator alleged that the defendant performed unnecessary tests, the court observed that:

> [i]n essence, the Amended Complaint does not identify any specific claims that were submitted to the United States or identify the dates on which those claims were

> presented to the government. Instead, Plaintiff relies exclusively on conclusory allegations of fraudulent billing. Although Plaintiff's description of the fraudulent schemes in which Defendant allegedly engaged is set out in specific detail, performing these tests is not a violation of the FCA. Defendant could perform as many tests as it pleased as long as it only billed for the ones allowable under the applicable governmental program. Therefore, the fact that Defendant engaged in fraudulent testing, without sufficient allegations regarding the billing for these tests, does not allege a fraud claim with sufficient particularity according to Rule 9(b).

Id. at 564 (citing U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1265-66 (9th Cir. 1996) which held that "the Act attaches liability, not to the underlying fraudulent activity, but to the 'claim for payment.'"). The alleged fraud in Clausen took place over a ten year period of time, as it did here. "It is hard to imagine how Defendant can respond to an allegation that fraud was committed over a ten year period" without knowing the time that some of the false claims were submitted, much less what the false claims actually were. Id.

The relator cannot escape this conclusion simply by arguing that the specifics are "uniquely" within Lockheed's control. Response at 7. Any claims for payment were sent to the VA; Lockheed does not have exclusive possession of the claims or records presented. Any argument that the pleading standards should be lessened for qui tam plaintiffs because they do not necessarily have access to government records has been rejected. See Robinson,

149 F.R.D. at 145 ("To apply a more lenient standard merely because the plaintiff was not the victim of the fraud and/or did not have access to all the facts, would be unfair to a defendant who may have to answer a complaint that would not be acceptable if the government had intervened in the action.").

Apart from the failure to plead any specific invoices, the relator's allegations fall well short because he has only alleged a laundry list of problems that Lockheed had in performing the contract. He has not alleged facts that would support an inference of fraudulent - rather than negligent -- conduct on the part of Lockheed. The case of U.S. v. Hydroaire, Inc., 1995 WL 86733, at *4-5, offers an instructive comparison. In that case, the government based its FCA action on the claim that defendant Hydroaire failed to deliver certain metallurgically bonded cylinders for use in Trident submarines as it had promised to do under the contract. The defendants made a motion to dismiss on the ground that the government did not plead fraud with particularity. Holding the complaint sufficient, the court observed that it alleged that (1) the contract entailed specific qualifications for the materials requested; (2) the defendant, Hydroaire, hired a company to produce the cylinders knowing that the company did not have the ability to produce the bond required under the contract; (3) Hydroaire was notified by a third party that the cylinders, in

fact, did not meet the bond specifications required under the contract; and (4) at five different times, Hydroaire nevertheless presented a certificate stating its cylinders were in compliance with the contract and requested payment for them. Id. at *4. The complaint further stated the time frame in which Hydroaire was notified that the cylinders did not comply with the contract (within a four-month window), and the specific dates on which a certificate of compliance was presented and the amount of payment requested. Id. at *4-5.

In comparison, the complaint here is bare. There is only one set of facts that even approaches the level of concreteness in Hydroaire, but even these facts are too sparse to sustain an FCA claim. The complaint alleges that the RFP required the contractor to deliver a system that would provide "C2" level security to protect sensitive proprietary and personal information, but an employee of Lockheed's subcontractor, SSDS, stated that "the most that Lockheed and SSDS were prepared to provide was security 'in the spirit of C2.'" Compl. at ¶ 51, 52. Nevertheless, Lockheed falsely represented to the VA that the system fully met its security requirements. Id. at ¶ 50. Unlike the complaint in Hydroaire, the complaint here fails to identify the SSDS employee, when or where the conversation with the SSDS employee occurred, when and where Lockheed's alleged misrepresentation occurred and

who made it.  See also Robinson, 149 F.R.D. at 146 (finding that
plaintiff's allegations failed to provide supporting facts on which
the allegation of fraud was founded where he failed to identify an
employee specifically). More fundamentally, the complaint does not
even state whether Lockheed ever requested payment on the basis of
this false assertion, and if so, when.

There are no other allegations that Lockheed knowingly
presented defective goods or services to the VA and attempted to
pass them off as meeting the RFP requirements.  Instead, the
remaining allegations boil down to claims that Lockheed failed to
meet the terms of the contract.  For example, the relator claims
that Lockheed charged excessive prices for the goods and services
it provided.  But according to the complaint, the contract itself
required the VA to purchase items from Lockheed "even when those
products and services were priced substantially higher than the
same or functionally equivalent items cost in the marketplace."
Compl. ¶ 61 (complaining that Lockheed insisted on this contract).
The only potential allegation of fraud is one that claims Lockheed
often failed to provide the technical support for which the VA paid
higher hardware and software prices.  Id. at ¶¶ 47, 49.  But
unaccompanied by any particulars (such as invoice dates, times when
service was refused, etc.) and absent any facts suggesting that
Lockheed knew it could not or would not provide technical support,

this allegation amounts to negligence or breach of contract, not a violation of the FCA. See Hindo, 65 F.3d at 613 (noting that knowledge is required under the FCA and that mistake or negligence is not enough); see also Hopper, 91 F.3d at 1265 (agreeing with the district court's analysis that "[i]t is not the case that any breach of contract ...automatically gives rise to a claim under the FCA.... The FCA is far narrower. It requires a false claim.").

Because the complaint alleges no facts from which it appears that Lockheed requested payment or submitted records for payment of claims it knew[1] were false, we dismiss the claims that defendant violated section 3729(a)(1) and (2).

## 2. § 3729(a)(7)

The relator's claim that Lockheed violated section 3729(a)(7) must fail for the same reasons. This section makes it unlawful for anyone to "knowingly make[], use[], or cause[] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."

The complaint alleges that Lockheed did not pay liquidated damages for late deliveries of hardware and software even though it

---

[1]/ According to paragraph 29 of the complaint, Lockheed and the VA negotiated a settlement as a result of Lockheed's failure to deliver a system that was compatible with the VA's ISMS project. Compl. ¶ 29. This tends to suggest that Lockheed acknowledged its failures under the contract.

had agreed to do so. Compl. at ¶¶ 36, 37, and 40. This is insufficient because there is no allegation that Lockheed avoided its obligation by lying to the VA. Indeed, the relator's Response brief shifts responsibility for this from Lockheed to the VA: "There is no indication of the VA charging Lockheed anything for its chronically late shipments to the VA, despite contract provisions that allowed the VA to do so." Response at 4.

The relator also argues that his complaint "alleges that Lockheed's misrepresentations and conspiracy prevented the government from obtaining default damages to which the VA was entitled." Response at 11. We find no allegation in the complaint that the VA was entitled to default damages or that Lockheed submitted records or statements to prevent these damages from being assessed.

Therefore, we dismiss the claim under § 3729(a)(7).

## B. Count II: Conspiracy

The relator claims that Lockheed violated § 3729(a)(3), which prohibits "conspir[ing] to defraud the Government by getting a false or fraudulent claim allowed or paid." The defendant argues that the relator's claim must fail because the complaint fails to identify any co-conspirator or any agreement to defraud, and therefore, Lockheed cannot draft a response. See United States ex rel. Durcholz v. FKW Inc., 997 F. Supp. 1143, 1158 (S.D. Ind. 1998)

("An agreement among two or more person[s] is the essence of conspiracy.").

The relator responds that because conspiracies are secret by their very nature, he need only allege circumstances which support the inference that Lockheed conspired with others to defraud the government. He paraphrases a number of allegations in his complaint which criticize the VA's dealings with Lockheed,[2] and states that this "laundry list of instances in which Lockheed was given a pass go far beyond causal [sic] contracting practices and lead to the common sense conclusion that Lockheed entered into an agreement with one or more parties to defraud the VA in the NOAVA contract." However, these allegations are not obviously indicative of a conspiracy to defraud; they are as consistent with simple

---

[2] The relator alleges the following facts are sufficient circumstantial evidence of fraud:
"1) the VA entered into a mandatory purchase contract with Lockheed in the early to mid-1990s, a time when vendors were vigorously competing for business;
2) Lockheed was allowed to charge more than double the going rate for hardware at a time when prices were plummeting as technology advanced;
3) Lockheed was allowed to deliver older generation equipment even though it had promised state of the art wares;
4) Lockheed was given many more than the allowed number of chances to test its network solutions;
5) Lockheed was not held to the requirement that it provide C-2 level security;
6) Lockheed was never assessed liquidated damages when it missed delivery dates, even though the contract called for such damages;
7) Lockheed was not charged with default, even though it never delivered the integrated systems it promised;
8) the VA did not question the gap between the expertise Lockheed promised and the lack of knowledge of the personnel Lockheed actually put on the job;
9) this $298 million contract was administered by a contracting officer without the proper warrant;
10) Lockheed was not penalized for shipping hardware that didn't work instead of computers that Lockheed promised would be "many of the top-selling products in the marketplace." Response at 13-14.

negligence on the part of the VA administrators as they are with the hypothesis of fraud.

Moreover, these allegations leave us to speculate at who was involved in this supposed conspiracy - does the relator mean to suggest that employees of the VA conspired with Lockheed to defraud the VA? There is only one VA employee mentioned by name -- William Stapleton, the officer who oversaw the contract and who allegedly exceeded his authority in making payments to Lockheed. Compl. ¶ 59. Other allegations suggest that several upper-level employees of the VA took part in the supposed conspiracy. For example, the relator alleges that the VA took reprisals against individuals who complained about Lockheed's performance of the NOAVA contract, and that it also removed those employees from "the communications loop" about the NOAVA contract. Compl. ¶ 64. These and other general complaints about the behavior of unidentified VA personnel are insufficient to add up to conspiracy, particularly when the relator has not alleged any agreement or named parties to the agreement.

Next the relator argues that SSDS conspired with Lockheed to defraud the VA. However, there is no allegation in the complaint that SSDS was a co-conspirator, or that SSDS and Lockheed had any agreement to defraud the VA. The only allegation that might support an inference of fraud is that SSDS knew that it and Lockheed could not provide level C2 security that Lockheed had

promised. However, the conspiracy must be one to "get a false or fraudulent claim allowed or paid" by the government, and as pointed out previously, there is no allegation that Lockheed or SSDS ever presented or attempted to present a claim for payment based on an assertion that they had delivered level C2 security.

Therefore, we dismiss the relator's conspiracy claim under § 3729(a)(3).

### CONCLUSION

For the reasons stated above, the relator's complaint is dismissed without prejudice. We grant the relator leave to file an amended complaint by April 27, 2001. Any amended complaint should meet the pleading requirements explained in this opinion.

DATE:      March 26, 2001

ENTER:     _____

John F. Grady, United States District Judge